| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br>-----------------------------------------------------------x<br>In re:                                                                     :<br>                                                                                 :<br>ROW NYC, LLC,                                                :<br>                                                                                 :<br>                                                                                 :<br>                                                            Debtor.   :<br>-----------------------------------------------------------x | NOT FOR PUBLICATION<br><br>Case No. 23-10015 (JLG)<br>Chapter 7<br><br>Jointly Administered |

# MEMORANDUM DECISION AND ORDER DENYING
## MOTION TO DISMISS CHAPTER 7 CASE

**A P P E A R A N C E S:**

J. SINGER LAW GROUP, PLLC
*Attorneys for Row NYC, LLC*
1 Liberty Plaza, 23rd Floor
New York, New York 10006
By:   Jeb Singer
         Ira Reid


TARTER KRINSKY & DROGIN LLP
*Attorneys for the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
By:   Jill Makower

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

The matter before the Court is Row NYC, LLC's (the "Debtor") motion (the "Motion")[2] for an order dismissing its voluntary chapter 7 case (the "Chapter 7 Case") pursuant to section 707(a) of the Bankruptcy Code. The chapter 7 trustee, Deborah Piazza (the "Trustee"), filed a response opposing the Motion (the "Response").[3] The Debtor filed a reply to the Response (the "Reply").[4] The Court held a hearing on the Motion. The Debtor and the Trustee appeared at the hearing through their respective counsel, and the Court heard arguments from the parties. The Court has reviewed the Motion, Response, and Reply, including all documents submitted in support thereof, and has considered the arguments made therein by the parties in support of their positions.

As explained below, the Debtor has not met its burden under section 707(a) of demonstrating that dismissal of the Chapter 7 Case is in the best interests of all parties in interest. Accordingly, the Court denies the Motion.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

---

[1] Capitalized terms have the meaning ascribed to them herein or in the Second Amended Complaint. References to "ECF No. __" are to documents filed on the electronic docket under Case No. 23-10015. References to "AP ECF No. __" are to documents filed on the electronic docket under Case No. 23-01102.

[2] *Motion to Dismiss Chapter 7 Case*, ECF No. 40.

[3] *Chapter 7 Trustee's Opposition to Motion to Dismiss Case*, ECF No. 44.

[4] *Debtor's Reply to Chapter 7 Trustee's Opposition to Motion to Dismiss Chapter 7 Case,* ECF No. 45.

2

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND[5]

**In 2013 Helaine Knapp Forms Debtor**

In 2013, Helaine Knapp ("Knapp") formed the Debtor as a New York limited liability company. Second Amended Complaint ¶¶ 11-12; Answer ¶¶ 11-12. The Debtor's initial members were Stephen Swartley and Jennifer Swartley (together, the "Swartleys"), and Knapp. Second Amended Complaint ¶ 13; Answer ¶ 13. Knapp was the Debtor's original managing member. Second Amended Complaint ¶ 14; Answer ¶ 14. CityRow Holdings Inc. ("Holdings Inc."), formerly CityRow Holdings LLC ("Holdings LLC"), is the sole member of the Debtor. Second Amended Complaint ¶ 2; Answer ¶ 2.

**In 2013 Debtor Enters Into Lease With Ames For**
**Premises Where It Operates Cardio Rowing Business**

In August 2013, Ames Associates, LLC ("Ames"), as landlord, and the Debtor, as tenant, entered into a five-year lease (the "Lease") for premises located at 80 Fifth Avenue, New York, New York (the "Premises"). Second Amended Complaint ¶ 16; Answer ¶ 16. Knapp executed the Lease in her capacity as the Debtor's CEO. Second Amended Complaint ¶ 20; Answer ¶ 20. Knapp and the Swartleys (collectively, the "Guarantors") each personally guaranteed the Debtor's obligations under the Lease (the "Lease Guarantees"). Second Amended Complaint ¶ 21; Answer ¶ 21. In or about March 2018, Ames and the Debtor entered into a Lease Extension Agreement (the "Lease Extension Agreement") extending the Lease from October 1, 2018 through September

---

[5] The Debtor's objection to the Trustee's continued prosecution of the Adversary Proceeding is central to the Motion. As noted below, in support of the Motion, the Debtor submitted the AP Dismissal Letter that it filed in the Adversary Proceeding. The Court takes judicial notice of the Second Amended Complaint and Answer to the Second Amended Complaint, both of which are filed of record in the Adversary Proceeding.

30, 2021. Second Amended Complaint ¶ 23; Answer ¶ 23. During the period of approximately Fall or Winter 2013 through March 2020, the Debtor operated a cardio rowing business from the Premises. Second Amended Complaint ¶ 19; Answer ¶ 19.

**Debtor Closes Its Business, Defaults Under The Lease and Vacates The Premises**

In March 2020, the Debtor shut down its business at the Premises due to executive orders, and never re-opened at any location. Second Amended Complaint ¶ 72; Answer ¶ 72. Commencing at that time, the Debtor defaulted in the payment of its rent obligations due under the Lease and Lease Extension Agreement. Second Amended Complaint ¶ 102; Answer ¶ 102. The Debtor refused to pay any rent to Ames after February 2020. Second Amended Complaint ¶ 103; Answer ¶ 103.

In September 2020, the Debtor vacated the Premises. Second Amended Complaint ¶ 75; Answer ¶ 75.

**Ames Sues Debtor For Breach Of Lease And Is Awarded Judgment**

In January 2021, Ames sued the Debtor in New York State Supreme Court, New York County (the "State Court") for breach of the Lease and Lease Extension Agreement (the "Ames Litigation"). Second Amended Complaint ¶ 105; Answer ¶ 105. On October 27, 2021, the court awarded Ames a judgment against the Debtor in the sum of $275,844.15 (the "Ames Judgment"). Second Amended Complaint ¶ 105; Answer ¶ 105. On the Petition Date, the Debtor owed an unsecured debt to the Landlord in the amount of $172,844.15 plus interest from October 27, 2021. Second Amended Complaint ¶ 106; Answer ¶ 106.

**Ames Sues Guarantors To Enforce Lease Guarantees**

In November 2021, Ames sued the Guarantors in the State Court to enforce the Lease Guarantees. Second Amended Complaint ¶ 165; Answer ¶ 165. On or about December 27, 2022,

4

Ames obtained a judgment by consent against Knapp in the amount of $84,874.67. Second Amended Complaint ¶ 167; Answer ¶ 167. On or about December 30, 2022, that judgment was satisfied. Second Amended Complaint ¶ 168; Answer ¶ 168.

**Debtor Commences Chapter 7 Case**

On January 5, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Petition").[6] The Petition identifies Holdings Inc. as the Debtor's "parent."[7] Petition at 22. It lists assets aggregating $41,647.90, *id*. at 13, consisting of $9,647.90 in cash and $32,000.00 in deposits to Ames. *id*. at 6.

The Petition discloses the Ames Litigation, *id.* at 23, and lists Ames as one of two non-priority unsecured creditors, *id.* at 16. It shows Ames as holding a disputed claim in the amount of $120,000.00, *id.* at 16, and lists Knapp and the Swartleys as co-debtors to Ames, *id.* at 20. "CityRow Affiliates" is the only other creditor listed in the Petition. It is listed as an unsecured creditor, with a claim of $17,179.06, for "Monies Loaned / Advanced." *Id.* at 16.

Two creditors filed proofs of claim. Ames filed a claim (the "Ames Claim") in the amount of $172,844.15 for "rent due on lease." Ames filed the Ames Judgment in support of the claim. The New York State Department of Taxation & Finance (the "Tax Department") filed a claim in the amount of $597.01 (the "Tax Claim"), $120.78 of which is claimed as priority, for unpaid sales tax (the "Tax Claim").

---

[6] *Chapter 7 Voluntary Petition for Non-Individuals*, ECF No. 1.

[7] Holdings, Inc. is the sole member of Debtor, with a 100% interest in Debtor. *See Amended Statement of Financial Affairs*, ECF No. 20 at 13.

5

**The Trustee Is Appointed And She Retains Professionals**

On the Petition Date, Deborah Piazza was appointed as interim chapter 7 trustee of the Debtor's estate (the "Estate"). She subsequently qualified as permanent trustee and is currently acting in such capacity. Pursuant to orders of the Court, she retained Tarter Krinsky & Drogin LLP as her counsel,[8] and Vinay Agarwal, CPA, LLC as her accountants[9] (together "Trustee's Professionals").

**The Adversary Proceeding**

On April 25, 2023, the Trustee initiated an adversary proceeding herein (the "Adversary Proceeding") by filing a complaint (the "Complaint")[10] against Holdings Inc., Knapp, and Holdings LLC seeking to avoid and recover alleged fraudulent transfers aggregating approximately $2.1 million. On June 7, 2023, the Defendants moved to dismiss Holdings LLC from the Complaint, in its entirety, and to dismiss Count 1 of the Complaint against Holdings Inc. and Knapp.[11] The Court granted the request to dismiss the Complaint against Holdings LLC, but denied the request to dismiss Count 1 of the Complaint against Holdings Inc. and Knapp.[12]

On November 29, 2023, the Trustee filed a motion to amend the Complaint and caption (the "Motion to Amend"),[13] seeking to (i) remove Holdings LLC as a defendant, (ii) add the Debtor's affiliate, CityRow Interactive, LLC ("Interactive") as a defendant, and (iii) add causes of

---

[8] *Order Granting Application to Employ Tarter Krinsky & Drogin, LLP as Counsel to the Trustee*, ECF No. 14.

[9] *Order Granting Application to Employ Vinay Agarwal, CPA, LLC as Accountant for the Trustee*, ECF No. 13.

[10] *Complaint, Deborah J. Piazza, as Chapter 7 Trustee of Row NYC, LLC v. CityRow Holdings, Inc. (In re Row NYC LLC)*, Case No. 23-01102 (Bankr. S.D.N.Y. Apr. 25, 2023), AP ECF No. 1.

[11] *Motion to Dismiss Complaint*, AP ECF No. 5.

[12] *See Memorandum Decision Resolving Defendants' Motion to Dismiss*, AP ECF No. 10; *Order Resolving Defendants' Motion to Dismiss*, AP ECF No. 15.

[13] *Plaintiff Trustee's Motion to Amend Complaint and Caption Pursuant to Fed. R. Bankr. P. 7015 and 7021 and Fed. R. Civ. P. 15(a)(2) and 21*, AP ECF No. 17.

6

action against Knapp. The Defendants objected to the Motion to Amend to the extent it sought relief against Knapp.[14] The Court sustained the limited objection, and denied the Trustee's request to assert damage claims against Knapp, but granted the Trustee's request for leave to file the proposed amended complaint against Holdings Inc. and Interactive.[15] On January 19, 2024, the Trustee filed an amended complaint against Holdings Inc. and Interactive (the "Amended Complaint")[16]. On February 2, 2024, Holdings LLC (rather than Holdings Inc.) and Interactive jointly filed an answer to the Amended Complaint in error.[17] On April 1, 2024, Holdings Inc. and Interactive jointly filed an amended answer to the Amended Complaint.[18]

On February 20, 2024, the Trustee filed a second motion to amend the complaint and caption (the "Second Motion to Amend"),[19] seeking to add an additional fraudulent conveyance cause of action against Holdings Inc. and Interactive, and to add Knapp as a defendant with a cause of action against her for breach of fiduciary duty. Holdings Inc. and Interactive objected to the relief sought against Knapp,[20] and the Trustee responded to the objection.[21] The Court overruled

---

[14] *Defendants' Memorandum of Law in Partial Opposition to Plaintiff's Motion to Amend*, AP ECF No. 18. In their opposition, the Defendants argued that the Trustee failed to state a claim for relief against Knapp in the proposed amended complaint, and therefore, it was futile to authorize the Trustee to amend the complaint to add Knapp as a defendant because it would not survive a motion to dismiss. The Trustee filed a reply in further support of the Motion to Amend. *Plaintiff Trustee's Memorandum of Law in Reply to Defendants' Partial Opposition to Motion to Amend Complaint and Caption*, AP ECF No. 19; *Declaration of Jill Makower in Reply to Defendants' Partial Opposition to Plaintiff Trustee's Motion to Amend Complaint and Caption*, AP ECF No. 20.

[15] *Memorandum Decision and Order Resolving Plaintiff's Motion to Amend Complaint and Caption*, AP ECF No. 24.

[16] *Amended Complaint*, AP ECF No. 27.

[17] *Answer to Amended Complaint*, AP ECF No. 28.

[18] *Amended Answer to Complaint*, AP ECF No. 33.

[19] *Plaintiff Trustee's Second Motion to Amend Complaint and Caption Pursuant to Fed. R. Bankr. P. 7015 and 7021 and Fed. R. Civ. P. 15(a)(2) and 21*, AP ECF No. 29.

[20] *Defendants' Memorandum of Law in Partial Opposition to Plaintiff's Second Motion to Amend*, AP ECF No. 34.

[21] *Plaintiff-Trustee's Memorandum of Law in Reply to Defendants' Partial Opposition to Plaintiff-Trustee's Second Motion to Amend Complaint and Caption*, AP ECF No. 38.

7

the objection and granted the Second Motion to Amend.[22] On June 24, 2024, the Trustee filed a second amended complaint (the "Second Amended Complaint")[23] against Holdings Inc., Interactive, and Knapp (the "Defendants"). On June 26, 2024, the Defendants jointly filed an answer to the Second Amended Complaint (the "Answer").[24]

**Ames Settles And Withdraws Its Claim**

The Debtor asserts that Ames reached a settlement with "various third parties" and withdrew the Ames Claim on November 8, 2024. Motion ¶ 3. A copy of Ames' notice of withdrawal of proof of claim ("Ames Withdrawal Notice") is annexed to the Motion to Dismiss as Exhibit A. The letter annexed to the notice states that "the Guarantors of the Debtor have compromised and Ames' claim for unpaid rent has been paid in full. Ames is no longer a creditor of the Debtor." Motion, Ex. A.

**Court Denies Debtor's Request For Leave To Move To Dismiss Adversary Proceeding**

On March 10, 2025, the Defendants filed a letter with the Court requesting leave to move to dismiss the Adversary Proceeding (the "AP Dismissal Letter").[25] They say that Ames is the Debtor's only "outside" creditor, that on November 8, 2024, it formally withdrew its claim against the Debtor, and that the Debtor will be filing a motion to dismiss the Chapter 7 Case. *Id.* at 1. They argue that when a bankruptcy case is dismissed, any related adversary proceedings should likewise be dismissed. *Id.* Moreover, they contend that there is no reason to continue prosecution of the Adversary Proceeding, because there are no remaining creditors in the Chapter 7 Case for the

---

[22] *Memorandum Decision and Order Resolving Plaintiff's Second Motion to Amend Complaint and Caption*, AP ECF No. 40. In her reply, the Trustee requested to add WaterRower, Inc. as a defendant, but the Court denied the request as it was raised for the first time in the reply improperly. *Id.* at 16.

[23] *Second Amended Complaint*, AP ECF No. 41.

[24] *Answer to Second Amended Complaint*, AP ECF No. 43.

[25] *Letter Re Request for Leave to Move to Dismiss*, AP ECF No. 45.

8

Adversary Proceeding to benefit. *Id.* at 1-2. On the record of the April 14, 2025 status conference in the Adversary Proceeding, the Court denied Defendants' request for relief, without prejudice.

**<u>The Motion</u>**

On March 12, 2025, the Debtor filed the Motion. In it, the Debtor seeks to dismiss the Chapter 7 Case for "cause" pursuant to section 707(a) of the Bankruptcy Code. Motion at 1. The Debtor says the Motion is "predicated on the fact that there are no remaining creditors in this chapter 7 case, other than the small $597.01 tax claim." *Id.* ¶ 1. It contends that any recovery realized from this Adversary Proceeding, "after the payment of the Trustee's fees and expenses and the de minimis $597.01 tax claim . . . would be distributed in this otherwise virtually no asset case entirely to the Debtor which, along with [Holdings LLC], is wholly owned by [Holdings Inc.]." *Id.* (footnote omitted).[26] The Debtor characterizes this as "yield[ing] the insane result of the Trustee, indirectly through the Debtor, delivering almost the entire litigation recovery to the parent company of the Defendant that the Trustee just successfully sued." *Id.* The Debtor argues that "continuation of this chapter 7 case for the sole purpose of prosecuting the [Adversary Proceeding] is an exercise in futility, a waste of the Court's time and judicial resources, and is motivated solely by the Trustee's interest in obtaining her Trustee's commission and recouping her attorneys' fees in this otherwise virtually asset-less case." *Id.* ¶ 2.

The Debtor contends that cause exists under section 707(a) of the Bankruptcy Code to dismiss this case because no legitimate bankruptcy purpose can be served by continuing the case, or the prosecution of the Adversary Proceeding because, now that Ames has withdrawn its claim, there are no creditors to be served or claims to be addressed. *Id.* ¶¶ 2, 7. It asserts that "[t]he Trustee's continuing efforts to administer an estate that no longer exists cries out for dismissal."

---

[26] In support, Debtor includes a copy of the AP Dismissal Letter. *Id.* Ex. B.

9

*Id.* ¶ 7. It says that "[t]his case involves a single 'asset' in the form of a lawsuit. Even if successful, this lawsuit would simply turn over the bulk of the recovery to the Trustee and potentially the parent of the Defendant." *Id.* It contends that "[t]here is simply zero benefit to any creditors from the lawsuit since there effectively are no creditors." *Id*.

**The Response**

The Trustee opposes the Motion. She denies that the Debtor has established "cause" under section 707(a) for dismissing the case. Response ¶ 1. Briefly, the Trustee contends that the legal standard for determining whether a chapter 7 case should be dismissed, is whether dismissal is in the best interest of all parties, and in applying that standard, the Court must consider the interests of both the debtor and the debtor's creditors. *Id*. ¶¶ 26-27. She argues that the interest of the debtor lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts. *Id*. ¶ 28. She says that interest is not relevant here, because the Debtor is a limited liability company that cannot obtain a "fresh start" through a discharge in bankruptcy. *Id*.

Accordingly, in that light, the Trustee contends that the Debtor is not affected by the continuation of the Chapter 7 Case because the remaining proceedings in this case are only related to the Adversary Proceeding, to which the Debtor is not a party. *Id*. ¶ 29. In contrast, she argues that creditors of the Debtor's Estate would be prejudiced if the Court dismisses the case because (i) dismissal would prevent the Trustee from making distributions to creditors; (ii) the Trustee's Professionals and the Tax Department cannot enforce their rights outside of bankruptcy; and (iii) the Debtor delayed in filing the Motion to Dismiss for more than two years after the Petition Date and almost two years after the Trustee's commencement of the Adversary Proceeding. *Id*. ¶¶ 32-43.

10

**The Reply**

The Debtor contends that the Trustee ignores the fact that the Debtor has no creditors other than the Tax Department, and that no bankruptcy purpose is served by continuing the case. Reply ¶ 2. The Debtor argues that identifying the Trustee and the Trustee's Professionals as creditors is inconsistent with the Bankruptcy Code. *Id.* ¶ 3 (citing 11 U.S.C. § 101(10)). It asserts that through the Adversary Proceeding, the Trustee is seeking a remedy that benefits no one but herself and her professionals, and that "courts have denied recovery of fees where the only parties who would likely benefit from the work are the trustee and associated professionals." *Id.* (citing *In re Riverside-Linden Inv. Co.*, 925 F.2d 320, 322 (9th Cir. 1991)).

## **LEGAL PRINCIPLES**

A chapter 7 debtor does not have an absolute right to dismiss its case. Section 707 of the Bankruptcy Code provides the statutory mechanism for the dismissal of chapter 7 cases. Specifically, section 707(a) provides that a court may dismiss a case under chapter 7 of the Bankruptcy Code after notice and a hearing and only for cause, including—

> (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a). The enumerated examples of "cause" are illustrative and not exhaustive. *Smith v. Geltzer,* 507 F.3d 64, 72 (2d Cir. 2007) ("*Smith*"); *In re Scotto*, No. 809-75956, 2010 WL 1688743, at *9 (Bankr. E.D.N.Y. Apr. 26, 2010). As such, courts must determine whether dismissal is appropriate on a case-by-case basis. *Gilboy v. Reukema (In re Gilboy)*, 610 F. App'x 17, 18 (2d Cir. 2015) (summary order) (citing *Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 442

11

(Bankr. App. 2d Cir. 1997)). That determination is left to the "sound discretion of the bankruptcy court." *Smith*, 507 F.3d at 723 (quoting *In re Hull*, 339 B.R. 304, 308 (Bankr. E.D.N.Y. 2006)).

In this Circuit, "the appropriate analysis" on a motion to dismiss a voluntary chapter 7 case is "whether dismissal would be in the best interest of all parties in interest." *Smith,* 507 F.3d at 72 (internal quotation marks and citations omitted); *see also Delaney v. Messer*, No. 22-CV-1664, 2023 WL 2614099, at *11 (E.D.N.Y. Mar. 20, 2023) ("[T]he legal standard for determining whether a Chapter 7 should be dismissed [is] whether dismissal is in the best interest of all parties." (cleaned up)). Accordingly, in determining whether "cause" exists to dismiss a voluntary chapter 7 case, the court must consider the interests of all parties in interest, including the debtor. *In re Dinova*, 212 B.R. at 442; *see also In re Hull*, 339 B.R. at 307 ("In determining whether cause to dismiss exists, the court must consider the interests of both the debtor and his or her creditors."). "The party moving for dismissal bears the burden of proving cause by a preponderance of the evidence." *In re Mulberry Dev., LLC*, 667 B.R. 399, 403 (Bankr. S.D.N.Y. 2024) (citing *In re Ajunwa*, No. 11-11363, 2012 WL 3820638, at *6 (Bankr. S.D.N.Y. Sept. 4, 2012)).

## ANALYSIS

### Interests Of Debtor Are Of Little Relevance

"The best interest of the debtor 'lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts.'" *Smith*, 507 F.3d at 72 (quoting *In re Dinova*, 212 B.R. at 441).

Here, the Debtor is a non-operating limited liability company that shut down its business in March 2020 and vacated its Premises in September 2020. Motion ¶¶ 72-73. Therefore, consideration of "fresh start" has little relevance for a limited liability company that is statutorily ineligible for discharge. *See* 11 U.S.C. § 727 (a)(1). As the Trustee correctly observes, "no fresh

12

start is possible; and since the Debtor has not had any operations since March or April 2020, no fresh start is needed or even desired by the Debtor." Response ¶ 28.

The Debtor urges that "continuation of this chapter 7 case for the sole purpose of prosecuting the Adversary Proceeding is an exercise in futility, a waste of the Court's time and judicial resources, and is motivated solely by the Trustee's interest in obtaining her Trustee's commission and recouping her attorneys' fees in this otherwise virtually asset-less case." Motion ¶ 2. The Debtor argues that "even if successful, [the] lawsuit would simply turn over the bulk of the recovery to the Trustee and potentially the parent of the Defendant. There is simply zero benefit to any creditors from the lawsuit since there effectively are no creditors." *Id.* ¶ 7. The Debtor's argument that the Trustee is not entitled to pursue claims when the only parties who would benefit are the Trustee and her professionals mischaracterizes the nature of the Adversary Proceeding and is not supported. *See In re Furr's Supermarkets, Inc.*, 373 B.R. 691, 699 (B.A.P. 10th Cir. 2007) (holding that "an action which will generate funds for the payment of administrative claims such as these is a proper use of Trustee's avoiding and recovery powers"). The Debtor's "insane result" argument mischaracterizes the Chapter 7 Case structure that has existed since the Petition Date: Ames was always the sole major outside creditor and Knapp and Swartleys (who never filed a claim) were always the Guarantors to that debt. Any excess recovery flowing back to Debtor after administrative expenses was always the inevitable outcome—a consequence present since the Petition Date. Having participated in the Adversary Proceeding for over two years without raising this concern, the Debtor cannot now claim inequity.

Furthermore, the Debtor is not directly affected by the continuation of this case since it is not a party to the Adversary Proceeding. The Trustee is pursuing claims against Holdings Inc., Interactive, and Knapp—not against the Debtor itself. Unlike in *Smith*, where the debtor sought

13

dismissal to regain control over a valuable personal injury action, the Debtor has no ongoing business operations to protect and no direct stake in the litigation. The Debtor ceased operations in March 2020, vacated its Premises in September 2020, and shows no indication of intending to resume business.

The case of *In re Livecchi*, No. 09-20897, 2014 WL 6655702, at *1 (Bankr. W.D.N.Y. Nov. 20, 2014), is instructive. There, the court faced a similar situation where a debtor sought dismissal, contending that "it is his feeling that in doing so, the creditors will benefit more than if this case remains active." *Id.* The court recognized that a chapter 7 case "should not be dismissed merely for the convenience of or at the request of the debtor" and that "the fact that the debtor is ineligible for a discharge is not cause for dismissal." *Id.* at *2. Similarly here, the Debtor's unsubstantiated assertion that dismissal would somehow benefit itself fails to support its conclusion that there is cause for dismissing the case.

**The Parties In Interest Would Be Substantially Prejudiced By Dismissal**

The Trustee persuasively argues that Estate creditors would be prejudiced by dismissal of the Chapter 7 Case in several significant ways. The Court finds these arguments compelling.

As the Trustee correctly contends, dismissal would prejudice creditors by preventing her from making distributions to creditors. The Trustee has identified potentially avoidable transfers in the Adversary Proceeding, including the Debtor's transfers of loan proceeds while insolvent after it had ceased operations. These claims represent a meaningful prospect for creditor recovery, as the Debtor has no ongoing operations or assets outside those potentially recoverable through the Adversary Proceeding. Creditors' interests lie in "equitable and full distribution of newly discovered assets and voidable transfers to all creditors," and dismissal would thwart this fundamental bankruptcy purpose. *In re Segal*, 527 B.R. 85, 95 (Bankr. E.D.N.Y. 2015).

The contrast with *Smith* underscores this point. In *Smith*, in support of her motion to dismiss her chapter 7 case, the debtor proposed an arrangement whereby "all of her creditors would be paid in full, including interest, immediately," making it "indisputable that dismissal under Smith's proposal . . . would be in the best interest of Smith's creditors." 507 F.3d at 74. Here, the Debtor offers no comparable proposal, instead seeking dismissal that would leave creditors entirely unpaid. This scenario resembles the one found in *In re Livecchi*, where the court denied dismissal because the debtor "does not indicate how creditors will benefit from dismissal and suggests no mechanism to address outstanding unpaid creditor claims." 2014 WL 6655702, at *1.

The Court agrees with the Trustee that the creditors would be prejudiced because they cannot enforce their rights outside of bankruptcy. *See In re Levicci*, 2014 WL 6655702 at * 2 ("In *Smith,* the Second Circuit held that an additional factor for the court's determination of 'cause' for the debtor's voluntary dismissal under § 707(a) is the debtor's ability to repay creditors outside of bankruptcy."). The Trustee's Professionals have accrued fees of approximately $190,000. Their right to payment arises solely under section 503 of the Bankruptcy Code. They have no comparable remedy outside the bankruptcy context. Similarly, the Tax Department with its $597.01 Tax Claim, would have limited practical recourse against a non-operating entity with no assets.

The Court finds no merit to the Debtor's assertion that the Trustee and her professionals are not "creditors" under the Bankruptcy Code and therefore their interests should not be considered. Each is a party in interest to this case. The inquiry under § 707(a) "requires the court to consider the prejudice to all parties in interest, not just one creditor constituency," and the "pool of interested parties includes administrative claimants." *In re Kaur*, 510 B.R. 281, 285-86 (Bankr. E.D. Cal. 2014). Dismissing the case without compensating the Trustee and her professionals would also result in an unwarranted windfall to the Estate. *In re Woodworth*, 70 B.R. 361, 362

15

(Bankr. N.D.N.Y. 1987) ("the quantum meruit basis of trustee compensation has been endorsed where debtors sought to dismiss their bankruptcy cases after trustee involvement and activity"); *see also In re E. Hill Mfg. Corp.*, No. 97-11884, 2001 WL 34808428, at *7 (Bankr. D. Vt. Jan. 25, 2001) (finding that "to allow the Debtor to enjoy the substantial benefit of the Applicant's services without compensating him would result in an unwarranted windfall to the estate").

Moreover, the Debtor should have anticipated the consequences of filing its voluntary petition, including that the Trustee would pursue potential estate claims and incur administrative expenses. *See In re Williams*, 305 B.R. 618, 621-22 (Bankr. D. Conn. 2004) (noting that debtors are aware when filing for bankruptcy that trustees will be eligible for administrative expense compensation and that these consequences naturally follow from commencing a bankruptcy case). This consideration reinforces the Trustee's argument that the Debtor cannot now complain about administrative costs after voluntarily initiating this case and remaining in bankruptcy for over two years.

The Court finds the Trustee's argument regarding the timing of the Motion to be persuasive. As the Trustee correctly notes, the Motion comes more than two years after the Petition Date and almost two years after commencement of the Adversary Proceeding. Courts recognize that creditors can be prejudiced when a motion to dismiss is brought "after the passage of a considerable amount of time" and they have been "forestalled from collecting the amounts owed to them." *Smith*, 507 F.3d at 72; *accord Segal*, 527 B.R. at 94; *In re Livecchi*, 2014 WL 6655702 at *2.

The circumstances here are similar to those in *In re Livecchi*, where the court denied a debtor's motion to dismiss that came "four years after the case was filed, and after substantial expenditure of judicial resources, liquidation of significant assets, interim distributions to creditors

16

by the Trustee, and the continuing prosecution of a related adversary proceeding." 2014 WL 6655702, at *3. The court concluded that "the harm to creditors in dismissing this case after more than five years of litigation and liquidation efforts far outweighs the benefit to the Debtor." *Id.* This reasoning applies with equal force here.

In addition, in *Smith*, the Second Circuit specifically addressed trustee fees, stating that the bankruptcy court "could hold an expedited hearing to determine what is owed to the trustee and could make dismissal contingent on [the debtor's] willingness and ability to pay that amount." 507 F.3d at 75. The Debtor has made no offer to pay the Professionals' Fees as a condition of dismissal, which further supports the Trustee's position. *See In re Katos*, No. 10-72490, 2010 WL 5125326, at *3 (Bankr. E.D.N.Y. Nov. 9, 2010) (determining that "it is equitable to require Debtor to compensate the Trustee for any fees and expenses allowed to his professionals as a condition of dismissal of this case").

Finally, the Court finds that the Debtor's reliance on *In re Riverside-Linden Inv. Co.*, 925 F.2d 320 (9th Cir. 1991) is misplaced. That case involved a fee application, not a motion to dismiss under section 707(a). *Id.* at 324. Moreover, unlike in *Riverside-Linden*, where the trustee's investigation served no purpose other than to benefit the trustee and his professionals, *id.*, the Trustee here initiated the Adversary Proceeding to recover assets for the benefit of all Estate creditors, as she properly argues in her Response.

Based on the foregoing, the Court concludes that the Debtor has failed to establish "cause" for dismissal under section 707(a). The Court finds that the minimal—if any—benefit to the Debtor from dismissal is substantially outweighed by the prejudice that would result to creditors.

**CONCLUSION**

For the foregoing reasons, the Court denies the Motion.

IT IS SO ORDERED.

Dated: May 9, 2025
      New York, New York

                                        /s/ *James L. Garrity, Jr.*
                                        Honorable James L. Garrity, Jr.
                                        United States Bankruptcy Judge